# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

TRACY D. L. C. SMITH and            )
CANDACE A. SMITH,                    )
                                     )
    Plaintiffs,             )
                                     )
    v.                      )          CV 219-167
                                     )
CHRIS HATCHER, in his               )
individual and official             )
capacity as a Glynn County          )
Police Officer; E. NEAL JUMP,       )
in his individual and               )
official capacity as Sheriff        )
of Glynn County; MICHAEL            )
HEATH, in his individual and        )
official capacity as jail           )
administrator for the Glynn         )
County Sheriff's Office;            )
RANDY AUSTIN, in his                )
individual and official             )
capacity as Major for the           )
Glynn County Sheriff's Office;)
STEPHANIE SHUMAN, in her            )
individual and official             )
capacity as Lieutenant for          )
the Glynn County Sheriff's          )
Office; and GLYNN COUNTY,           )
GEORGIA,                             )
                                     )
    Defendants.             )

## ORDER

    Before the Court is Defendant Randy Austin's motion for

summary judgment, dkt. no 81, and Defendants Chris Hatcher, E.

Neal Jump, Michael Heath, Stephanie Shuman, and Glynn County's

(the "Glynn County Defendants") motion for summary judgment, dkt. no. 83.  For the reasons stated below, Defendant Austin's motion is **GRANTED** in part and **DENIED** in part, and the Glynn County Defendants' motion is **GRANTED**.

### Background

This case arises out of an alleged contractual agreement wherein Anastasia and Allen Tucker promised to give legal custody of their minor child to Plaintiffs Tracy D. L. C. Smith and Candace A. Smith ("Plaintiffs") in late 2015.  Dkt. No. 44 ¶ 8.  Plaintiffs took physical custody of the child and returned to Arkansas where they lived, but due to a signing error an Arkansas court rejected Plaintiffs' guardianship petition.  See Dkt. No. 83-2[1] ¶ 12. Plaintiffs sought to fix this error, but upon returning to Georgia in spring 2016, they could not locate the Tuckers.  Id. ¶¶ 12-15. As a result, Plaintiffs never received legal custody of the child. Id. ¶ 15.

A year later in 2017, Mrs. Tucker went to the Glynn County Police Department, where she met with Defendant Sergeant Chris Hatcher ("Defendant Hatcher").  Dkt. No. 83-2 ¶ 18.  During that meeting, Mrs. Tucker alleged that, despite the Tuckers' requests, Plaintiffs refused to return their minor child to them.  Id. ¶ 19.

---

[1] Unless otherwise indicated, the Statements of Material Facts referenced herein were admitted in Plaintiffs' response.  See Dkt. Nos. 92-1, 93-1.

Defendant Hatcher documented that conversation in an incident report.  Id. ¶ 20.

In 2018, Defendant Hatcher received a subpoena to testify before a Glynn County grand jury handling charges related to this incident.  Id. ¶ 22.  Defendant Hatcher appeared before the grand jury and testified about his meeting with Mrs. Tucker.  Id. ¶ 24. Subsequently, the grand jury indicted Plaintiffs two different times on charges of Interstate Interference with Custody in violation of O.C.G.A. § 16-5-45(c).  See Dkt. Nos. 44-6, 44-8. This led to Plaintiffs' arrest on two separate occasions based on grand jury indictments and bench warrants issued by the Glynn County Superior Court.[2]  Dkt. No. 44 ¶¶ 31-34, 50-52.  Both indictments were subsequently dismissed as not stating a violation of law.  Id. ¶¶ 42, 90.

A large portion of Plaintiffs' claims arise out of their treatment while in custody.  They allege they were denied their right to counsel by not being able to meet collectively, that they were subject to unconstitutional strip searches after meetings with counsel, and that Defendants improperly confiscated and read

---

[2] The grand jury indicted Plaintiffs on two separate occasions.  On August 22, 2018, the grand jury returned the first indictment for one count of interstate interference with custody.  See Dkt. No. 44-6.  On January 18, 2019, the Glynn County Superior Court entered an order dismissing the first indictment.  On January 23, 2019, a grand jury indicted Plaintiffs a second time for five counts of the same offense. See Dkt. No. 44-8.  On June 14, 2019, the second indictment was also dismissed.

their legal documents.  Id. ¶¶ 58-66, 77-83, 86-87.  Plaintiffs allege the Glynn County Defendants violated their constitutional rights by not providing (or delaying) medical treatment, specifically that Plaintiff Tracy Smith was denied an inhaler and Plaintiff Candace Smith was denied regular access to insulin to treat her diabetes.  Id. ¶¶ 72-76.  Additionally, Plaintiffs allege Defendant Austin violated their First Amendment right to freely exercise their religious beliefs by denying them their vegan diets after he observed Plaintiffs purchase from the prison commissary products which he believed were not vegan—in this case, ramen with chili seasoning.[3]  See id. ¶¶ 67-71; Dkt. No. 84-1 at 186:24-194:16.

Plaintiffs' amended complaint alleges a total of fourteen federal claims and numerous state law claims, including claims for false arrest, false imprisonment, malicious arrest, malicious prosecution, and intentional infliction of emotional distress. Dkt. No. 44.  Defendants Andrea Browning and the Georgia Department of Human Services ("DHS") filed motions to dismiss, which were granted by this Court.  Dkt. No. 71.  As a result, Plaintiffs' claims against Defendants Browning and DHS were dismissed, leaving

---

[3] Though it is not necessary to resolve the issue at this stage, it appears Defendant Austin's judgment about the ramen's inconsistency with vegan principles may have been incorrect.  Ramen (made of wheat flour and oil) and chili seasoning (made of a blend of spices) are both, by themselves, vegan products.  See TOP RAMEN PRODUCTS, https://nissinfoods .com/products/top-ramen-noodles (last visited Oct. 25, 2021).

Defendants Austin, Hatcher, Jump, Heath, Shuman, and Glynn County in the case.  <u>Id.</u>

Defendant Austin and the Glynn County Defendants argue that they are entitled to summary judgment on all of Plaintiffs' claims. <u>See</u> Dkt. Nos. 81, 83.  Plaintiffs in their response briefs concede that a number of their claims cannot move past the summary judgment phase.  <u>See</u> Dkt. Nos. 96, 97.  As such, Defendant Austin's motion for summary judgment as to Plaintiffs' claims against him in his official capacity, as well as Counts III, IV, V, VI, VII, IX, X, XI, XII, XIII, XIV (1)-(3),[4] and XV as they relate to Defendant Austin are **GRANTED** as unopposed.  Additionally, the Glynn County Defendants' motion for summary judgment as to Plaintiffs' claims against them in their official capacities, as well as Counts III, IV, IX, X, XI, XII, XIII, XIV (1)-(3) as they relate to the Glynn County Defendants and Counts XV and XVI as they relate specifically to Defendant Glynn County are also **GRANTED** as unopposed.  The Court now addresses Defendants' motions for summary judgment as to Plaintiffs' remaining claims.

## Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the

---

[4] Due to a numbering error in Plaintiffs' amended complaint, Count XIV appears three times in a row.  These Counts will be referred to as XIV (1), XIV (2), and XIV (3), respectively.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury [to] return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with

additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117.   Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**Discussion**

After Plaintiffs' concession that summary judgment should be granted as to the several Counts noted *supra*, the following Counts remain:

As to Defendant Austin:

- Count VIII (First Amendment);

- Count XVI (Intentional Infliction of Emotional Distress).

As to the Glynn County Defendants:

- Count I (Failure to Intervene regarding Defendant Hatcher);

- Count V (Fourteenth Amendment Due Process);

- Count VI (Fourteenth Amendment Equal Protection);

- Count VII (Sixth Amendment);

- Count VIII (First Amendment);

- Count XVI (Intentional Infliction of Emotional Distress);

- Count XVIII (Sheriff as Final Policymaker).

For the reasons stated below, the First Amendment claim against Defendant Austin survives summary judgment, but the intentional

infliction of emotional distress claim against Austin, as well as all the claims against the Glynn County Defendants, do not. The Court will examine each of these claims in turn.

**I.   Defendant Austin's Motion for Summary Judgment**

   **a. Plaintiffs show a genuine dispute as to a material fact regarding their First Amendment claim**

Plaintiffs argue that Defendant Austin violated their First Amendment right to freedom of religion when he withheld their vegan meals.   Dkt. No. 97 at 10-11.   Unlike the other Defendants, Defendant Austin oversaw the kitchen staff while Plaintiffs were detained.   Dkt. No. 81-1 ¶ 52.   Immediately before Plaintiffs stopped receiving vegan meals, Defendant Austin had a conversation with both Plaintiffs during which he told them he did not believe they were actually vegan.   Id. ¶ 53.   Defendant Austin claims this belief was based on Plaintiffs' commissary purchases at the detention center. Id.

Defendant Austin seeks summary judgment, arguing he is entitled to qualified immunity because Plaintiffs' right to their religious dietary accommodations at the time of the alleged violation was not clearly established.   In the Eleventh Circuit, in order to receive qualified immunity a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."   Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir.

1991) (internal quotation marks and citation omitted).  Because Plaintiffs concede that Defendant Austin's decision to approve or deny dietary options for prisoners was discretionary, Plaintiffs must satisfy two requirements before qualified immunity will be rejected.  See Dkt. No. 81-2 at 14-15; see generally Hall v. Flournoy, 975 F.3d 1269, 1275 (11th Cir. 2020).  First, Plaintiffs "must show 'that the official violated a statutory or constitutional right,'" and second, Plaintiffs "must show 'that the right was "clearly established" at the time of the challenged conduct.'"  Wade v. United States, 13 F.4th 1217, 1225 (11th Cir. 2021) (quoting Echols v. Lawton, 913 F.3d 1313, 1319 (11th Cir. 2019)).  The Court will look to each step in turn.

### i. Constitutional Violation Prong

An inmate must be given a "reasonable opportunity" "to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  Prison officials may limit a prisoner's free exercise of sincerely held religious beliefs only if such "limitations are 'reasonably related to legitimate penological interests.'" Johnson v. Brown, 581 F. App'x 777, 780 (11th Cir. 2014) (emphasis added) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)).

Many cases permit prison authorities to limit dietary options available, explaining that "legitimate penological interests"

include the "interests of reducing the costs and burdens entailed in accommodating the smorgasbord of food-related religious beliefs likely to be encountered in a prison population." Watkins v. Haynes, No. CV 212-050, 2013 WL 1289312, at *13 (S.D. Ga. Mar. 27, 2013) (listing cases). Thus, in Watkins, this Court determined that qualified immunity barred a claim where "no reasonable prison official would have concluded that Rastafarian inmates had an established right to meals uncontaminated by animal flesh, especially where non-flesh options were provided." Id.

As such, prison officials usually have some flexibility to deny dietary requests due to the increased costs and burdens placed on the prison system. Here, however, Austin does not argue that he did not violate Plaintiffs' constitutional rights because he discontinued Plaintiffs' vegan meals due to logistical concerns or burdens.[5] He merely argues that the need to provide Plaintiffs with vegan meals was not clearly established at the time. See Dkt. No. 81-2 at 15-17 ("the relevant question before this Court is [whether] . . . at the time Plaintiffs were allegedly denied vegan meals, was the law clearly established that Seventh Day Adventists had a First Amendment right to vegan meals"). Thus,

---

[5] Nor could he, as he conceded at the hearing the prison provided the vegan diet to Plaintiffs before stopping their diet without any added burden to the prison.

the Court proceeds to that prong of the qualified immunity analysis.

### ii. Clearly Established Prong

To block qualified immunity and move past the summary judgment stage, Plaintiffs must also show the law is "clearly established" that denying Plaintiffs their vegan diets violated their First Amendment free exercise rights. See Wade, 13 F.4th at 1225. Defendant Austin argues that Plaintiffs must point to case law that clearly establishes a Seventh Day Adventist is entitled to a vegan diet as part of their sincerely held religious beliefs. Dkt. No. 100 at 3. Plaintiffs, on the other hand, argue the qualified immunity doctrine does not require such specific facts for the law to be "clearly established" and "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). Because Austin does not contest the sincerity of Plaintiffs' belief or offer any logistical or penological reason for denying Plaintiffs access to vegan meals, caselaw establishing an inmate's First Amendment right to a religious diet based on their sincerely held religious beliefs is enough to defeat his claim to qualified immunity.

A plaintiff can "show that the contours of a right were clearly established in one of three ways." Wade, 13 F.4th at 1226.

First, they can present a "materially similar case that has already been decided." Echols, 913 F.3d at 1324. Second, they can point to "a broader, clearly established principle that should control the novel facts of the situation" which "must establish with obvious clarity that in the light of pre-existing law the unlawfulness of the official's conduct is apparent." Id. Or third, a plaintiff can show "the conduct involved in the case may so obviously violate the Constitution that prior case law is unnecessary." Id. This category is narrow and includes only those situations where the "official's conduct lies so obviously at the very core of what the relevant constitutional provision prohibits that the unlawfulness of the conduct was readily apparent to the official." Id.

1. First, Plaintiffs use the second approach and point to Hernandez to argue that its broad principle shows the contours of their dietary right are "clearly established." Dkt. No. 97 at 10 (citing 490 U.S. at 699). Under this pathway, Plaintiffs must show Hernandez's legal principle that a government official must not substantially burden a plaintiff's religious belief without a compelling reason that establishes with "obvious clarity" that Defendant Austin's conduct is unlawful. Echols, 913 F.3d at 1324. It is not enough to simply point to a case declaring conduct in a particular situation violates a plaintiff's constitutional rights. The "authoritative judicial decision [must] decide[ ] a case by

determining that 'X Conduct' is unconstitutional *without tying* that determination to a particularized set of facts," such that "the decision on 'X Conduct' can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." Vinyard, 311 F.3d at 1351.  In general, "the smaller the number of material facts in an opinion, the wider will be the legal principle it decides."  Id. at 1351 n.19.

In Hernandez, the Supreme Court considered whether Scientologists could deduct dues paid to their church in return for "trainings" and "audits" as charitable donations on their federal tax returns.  490 U.S. at 699.  While conducting the "free exercise inquiry"—i.e., asking "whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden"—the Court reasoned that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."  Id.

Plaintiffs argue that the broad principle espoused in Hernandez regarding the judiciary's not questioning one's particular beliefs prohibits questioning the veracity of Plaintiffs' religious beliefs, and, in doing so, substantially burdened the practice of their faith by taking away their vegan

meals.  Dkt. No. 97 at 10-11.

But their understanding of Hernandez is incorrect. Hernandez's principle is simply that, when conducting a free exercise inquiry, the judiciary is not in the business of inquiring whether a litigant correctly interprets his faith's commands. Hernandez, 490 U.S. at 699 (citing Thomas v. Review Bd. Of Ind. Emp't Sec. Div., 450 U.S. 707, 716 (1981)). Hernandez does not, as Plaintiffs suggest, establish with obvious clarity that a prison official's questioning the sincerity of a prisoner's religious beliefs and then stopping their dietary requests is prohibited by the First Amendment. It stands for the proposition that the government cannot question the "*centrality*" of a belief to a litigant's faith, or the "validity" of his interpretation of that faith—not that a plaintiff's sincerity is beyond consideration. 400 U.S. at 699; see Nathan Chapman, Adjudicating Religious Sincerity, 92 Wash. L. Rev. 1185, 1188 (2017) ("The point of a religious accommodation is to reduce the burden . . . on religious exercise. When a claimant is insincere, [there is] no burden on religious exercise at all"). As such, Plaintiffs' use of Hernandez to show their First Amendment rights are clearly established falls short.

**2.** Next, Plaintiffs use the existing caselaw pathway. Plaintiffs must show "the preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated

public officials that what Defendant Austin was doing violated Plaintiffs' federal rights in the circumstances." Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (quotation omitted) (alteration adopted). Thus, in the Eleventh Circuit a court "consider[s] what an 'objectively reasonable official must have known at the pertinent time and place' and ask 'whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation the defendant officer confronted.'*" Wade, 13 F.4th at 1226.

Defendant Austin argues that Plaintiffs must show caselaw that answers the question "[d]id the law, [on date of alleged violation], clearly establish a [particular religion] inmate's right to a particular dietary preparation . . . ?" Dkt. No. 81-2 at 16 (quoting Watkins, 2013 WL 1289312, at *13) (brackets in original). Defendant Austin argues that Watkins compels the Court to find that a prison official essentially *does not need* a justification for denying an inmate's religious diet, provided there is not previous caselaw specifically giving that right to an inmate of a particular religion. This argument ignores the expanse of caselaw from the Supreme Court down declaring that inmates have the First Amendment right to religious diets, absent a reasonable penological interest counselling the prison official to deny this dietary accommodation. See, e.g., Cruz, 405 U.S. at 322; O'Lone v. Estate of Shabazz, 482 U.S. 342, 347-48 (1987); Johnson, 581 F.

App'x at 780; <u>Makin v. Colo. Dep't of Corrs.</u>, 183 F.3d 1205, 1211 (10th Cir. 1999); <u>Kahane v. Carlson</u>, 527 F.2d 492 (2d Cir. 1975).

Thus, it is clearly established that a reasonable government official would have known that a prisoner had the right to freely exercise his religion if that exercise did not compromise a legitimate penological interest.  See <u>Johnson</u>, 581 F. App'x at 780; <u>Watkins</u>, 2013 WL 1289312, at *13; <u>Kahane</u>, 527 F.2d at 495 (finding "prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples" absent legitimate penological interests).[6] Since that is the only relevant question in dispute, Plaintiffs have met their burden of pointing to clearly established law.

To the extent Defendant Austin argues that caselaw cited in his brief compels the opposite conclusion, <u>see</u> dkt. no. 81-2 at 16-17, it is distinguishable on its face.  In each case to which Defendant Austin cites, the prison officials either pointed to legitimate penological concerns to justify not offering the specific religious diet or the court did not touch on the issue at all.  See, e.g., <u>Linehan v. Crosby</u>, No. 4:06cv225, 2008 WL 3889604, at *12 (N.D. Fla. Aug. 20, 2008) ("Defendants have shown that their

---

[6] Again, Defendant Austin does not argue either 1) that his decision to discontinue Plaintiffs' vegan diets did not violate the constitution, nor 2) that he had a legitimate penological reason for doing so.  <u>See</u> Dkt. Nos. 81-2, 100.  Since his only other argument is to question whether Seventh Day Adventists have the constitutional right to religious diets (which <u>Cruz</u> and other caselaw clearly establish), he has not offered anything to dispute these clearly established principles.

failure to provide Plaintiff with a kosher diet is reasonably related to legitimate penological interests."); Rich v. Buss, No. 1:10cv157, 2012 WL 694839, at *6 (N.D. Fla. Jan. 12, 2012) ("Defendants have demonstrated that their failure to provide Plaintiff a kosher diet is reasonably related to legitimate penological interests."); Smith v. Pleskovich, No. 1:06cv200, 2008 WL 660418 (N.D. Fla. Mar. 6, 2008)(dismissing the plaintiff's claim on other grounds); Cowart v. Baldwin Cty. Corrs. Ctr. Med. Dep't, No. 14-197, 2015 WL 1345162 (S.D. Ala. Mar. 23, 2015) (same).  This caselaw does not resolve the only constitutional question presented *here* because, unlike the officials in his cited cases, Defendant Austin has not offered a penological justification for failing to provide Plaintiffs a vegan diet.[7]  Thus, they do not defeat Plaintiffs' showing that their First Amendment right to a vegan diet was clearly established.

Because controlling precedent clearly establishes an inmate's right to religious dietary accommodations, and because Defendant Austin did not point to any legitimate penological concerns in stopping Plaintiffs' vegan diets, qualified immunity, and by extension summary judgment, must be **DENIED**.

       **b. There is no genuine dispute as to any material fact**

---

[7] Moreover, these cases address the first prong of the qualified immunity analysis—whether a constitutional violation exists in the first place—and do not speak to the clearly established prong.

**regarding Plaintiffs' intentional infliction of emotional distress claim.**

Defendant Austin next argues that he is entitled to summary judgment on Plaintiffs' intentional infliction of emotional distress ("IIED") claim because there is no evidence of any conduct on Defendant Austin's part that was extreme and outrageous resulting in emotional distress to Plaintiffs. Dkt. No. 81-2 at 44-45. Plaintiffs allege in the amended complaint that Defendant Austin's role in the "arrest and incarceration of PASTOR and MRS. SMITH" is the basis for their IIED claim. Id. at 46 (citing Dkt. No. 44 ¶ 161). In Plaintiffs' response brief, they argue for the first time that the basis of their IIED claim is *not* the arrest, but rather Defendant Austin's "arbitrar[y] and capricious[]" decision to "terminate[ ] Pastor and Mrs. Smith's diets." Dkt. No. 97 at 13. It is axiomatic that a party cannot assert a new factual basis for its claims at the summary judgment stage. See Varazo v. Keiser Corp., 754 F. App'x 918, 919 (11th Cir. 2018); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment"). Plaintiffs' attempt to change the basis of their IIED claim at this stage must be disregarded, and the claim must stand or fall as pled in the amended complaint. See King v. Marcy, 809 F. App'x 764, 769 (11th Cir. 2020) (holding a plaintiff could not raise a different basis

for their Fourth Amendment claim at the summary judgment stage).

Plaintiffs' stated basis for their IIED claim is that Defendant Austin acted recklessly by "intentionally participating in the arrest and incarceration of PASTOR and MRS. SMITH for conduct that did not violate the law." Dkt. No. 44 ¶ 161. Plaintiffs have conceded that Defendant Austin did not participate in Plaintiffs' arrest, that he was merely an assistant jail administrator when Plaintiffs were detained, dkt. no. 81-1 ¶¶ 7, 10; dkt. no. 93-1 ¶¶ 7, 10, and that he did not have knowledge of the first indictment being dismissed during the five-day period between the dismissal of the first indictment and the handing-down of the second, dkt. no. 81-1 ¶¶ 21-22; dkt. no. 93-1 ¶¶ 21-22. Since Defendant Austin was not present at the arrest and did not have knowledge of the first indictment's dismissal, Plaintiffs cannot show that Austin acted recklessly in arresting Plaintiffs or continuing to incarcerate them from January 18-23, 2019. Thus, Plaintiffs IIED claim against Defendant Austin does not present a dispute as to a genuine issue of material fact, and Defendant Austin's motion for summary judgment is **GRANTED** on this ground.

## II. Glynn County Defendants' Arguments

### a. Failure to Intervene (the Grand Jury Testimony Claim)

Count I of the amended complaint contains a Fourth Amendment claim against Defendant Hatcher. Dkt. No. 44 at 21. The amended complaint does not clarify what kind of Fourth Amendment claim

Plaintiffs allege—only that Defendant Hatcher violated "the Fourth Amendment with his actions that led directly to the indictment, arrest, and incarceration of [Plaintiffs]." Id. Notably, Defendant Hatcher did not arrest Plaintiffs and was not present for the arrest. Dkt. No. 83-2 ¶ 28; Dkt. No. 96 at 10. Nonetheless, Plaintiffs contend that Defendant Hatcher had an opportunity (and, indeed, a duty) to intervene in Plaintiffs' prosecution by telling the grand jury Mrs. Tucker's complaint did not allege a violation of law before the grand jury handed down the first indictment. Dkt. No. 96 at 10-11.

The flaw of Plaintiffs' argument is that witnesses have absolute immunity for grand jury testimony. See Rehberg v. Paulk, 566 U.S. 356, 369 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."); Scarbrough v. Myles, 245 F.3d 1299, 1305 (11th Cir. 2001) ("Because a preliminary hearing [to determine probable cause] is a judicial proceeding, [a police officer/detective] enjoys absolute immunity from civil liability damages resulting from his testimony. He also has absolute immunity from state-law claims.") (citations omitted). Additionally, Plaintiffs have failed to submit any evidence that Defendant Hatcher lied or acted in an improper manner during his grand jury testimony or in filing his incident report after speaking with Mrs. Tucker. At most, Plaintiffs take issue with Defendant Hatcher's failure to instruct the grand jury that

Plaintiffs did not violate the law. Dkt. No. 96 at 11.  Such a contention does not overcome the absolute immunity provided to grand jury witnesses, and thus the Glynn County Defendants' motion for summary judgment is **GRANTED** on this ground.

### b. Deliberate Indifference (the Medical Treatment Claims)

In Count V of the amended complaint, Plaintiffs bring a 42 U.S.C. § 1983 Fourteenth Amendment claim for deliberate indifference to Plaintiffs' health needs due to the withholding of their medications.  Dkt. No. 44 ¶¶ 111-13.  Plaintiff Tracy Smith alleges he was delayed access to his asthma inhaler, stating: "I had been suffering from an asthma attack for quite some time.  They were slow in bringing it. And then when [Lieutenant Shuman] had it, she delayed to give it to me while I was having my asthma attack in front of her."  Dkt. No. 84-1 at 157:20-24.  Plaintiff Candace Smith alleges she experienced routine delays in receiving her insulin that she took for diabetes. Dkt. No. 92-1 ¶ 34.  While Mrs. Smith maintains delay in her treatment happened many times, she cannot identify a particular jailer who put her health in jeopardy.  Id. ¶ 37.

A Fourteenth Amendment claim of deliberate indifference to medical needs under 42 U.S.C. § 1983 requires four elements: (1) an objectively serious medical need, (2) an objectively insufficient response to that need, (3) subjective awareness of facts signaling the need, and (4) an actual inference of required

medical action from those facts which would demonstrate deliberate indifference.  See Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).[8]  Moreover, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.  Each individual Defendant must be judged separately and on the basis of what that person knows."  Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

Although Plaintiff's Fourteenth Amendment claim is alleged against multiple Defendants, Plaintiffs have identified only one occasion where a specific Defendant was allegedly indifferent to their medical needs.  Specifically, Mr. Smith testified that Defendant Shuman delayed giving him his inhaler while he was having an asthma attack.  Dkt. No. 84-1 at 157:2-24.  Aside from Defendant Shuman, neither Plaintiff could recall a specific Defendant who denied or delayed any of their medical treatment.  As such, Plaintiffs have failed to allege sufficient facts pertaining to the other Defendants in order to overcome summary judgment for Count V.

As for Defendant Shuman, Mr. Smith's testimony might provide a valid basis for summary judgment to be denied. When treatment is

---

[8] The Eleventh Circuit has held that "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner[.]"  Andujar v. Rodriguez, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007) (quoting Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997)).

delayed, the delay must be "tantamount to unnecessary and wanton infliction of pain."  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotation omitted).  Mr. Smith has stated under oath that Defendant Shuman—without any justification—withheld Plaintiff's inhaler while he was having an asthma attack in front of her.  Even if this delay was temporary, a reasonable juror could see this conduct as unnecessary and wanton infliction of pain.

Yet, Plaintiffs' deliberate indifference claim against Defendant Shuman fails for other reasons.  As the Eleventh Circuit has consistently held, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  Owen v. Corizon Health Inc., 703 F. App'x 844, 847 (11th Cir. 2017) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)); see also Ludy v. Pullins, No. CV 318-033, 2020 WL 4819950, at *10 (S.D. Ga. Aug. 19, 2020), report and recommendation adopted, No. CV 318-033, 2020 WL 5807963 (S.D. Ga. Sept. 29, 2020) ("No such medical evidence exists in the record, and the undisputed facts provide no basis for a reasonable juror to find Plaintiff suffered any exacerbation of his asthma from the breathing treatments he missed or the temporary loss of use of his inhalers and CPAP machine.").  Plaintiffs have failed to allege any facts or put forth any medical evidence that suggests Mr. Smith

suffered detrimental effects as a result of delay in his medical treatment. Accordingly, because Plaintiffs have failed to show a constitutional violation, qualified immunity bars their deliberate indifference claim against Defendant Shuman, and the Glynn County Defendants' motion for summary judgment on this ground is **GRANTED**.

### c. Equal Protection (the Strip Search Claims)

In Count VI of the amended complaint, Plaintiffs bring a 42 U.S.C. § 1983 Fourteenth Amendment claim for equal protection against Defendants Jump, Heath, Austin, and Shuman. Dkt. No. 44 at 26-27. Plaintiffs contend that these Defendants took numerous actions including: "abuse, harassment, intimidation, maltreatment, deliberate indifference as to their medical treatment, interfering in their legal representation, refusal in allowing them to consult with counsel together, subjecting them to strip searching, ceasing their religious dietary accommodation, [and] right to free association," all on account of their status as an interracial couple. Id. ¶ 115. Plaintiffs note that Defendant Shuman "especially used her status as . . . a detention lieutenant to oppress [Plaintiffs] on account of their race." Id. ¶ 116.

To establish an equal protection claim, a prisoner must demonstrate that (1) "'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944,

946–47 (11th Cir. 2001) (quoting <u>Damiano v. Fla. Parole & Prob.</u> <u>Comm'n</u>, 785 F.2d 929, 932-33 (11th Cir. 1986)). "Inconsistency in the operation of a prison may not, in itself, constitute a denial of equal protection." <u>Milner v. Tallapoosa Cty. Jail</u>, No. 3:07cv165, 2007 WL 1063328, *2 (M.D. Ala. Apr. 5, 2007) (citing <u>Village of Arlington Heights. v. Metro. Hous. Dev. Corp.</u>, 429 U.S. 252, 265-66 (1977)).

A plaintiff must also show a discriminatory intent or purpose behind the official action in order to make a cognizable equal protection claim. <u>Pers. Adm'r of Mass. v. Freeney</u>, 442 U.S. 256, 279 (1979). To show discriminatory intent, a plaintiff must show "instances of purposeful or invidious discrimination," because "[e]vidence which merely indicates disparity of treatment or erroneous or even arbitrary administration of state powers . . . is insufficient to show discriminatory intent." <u>Grimes v. Lee</u> <u>Cty. Cir. Ct.</u>, 2006 WL 463931 (M.D. Ala. Feb. 27, 2006) (citing <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987)). Discriminatory purpose "implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Pers. Adm'r</u>, 442. U.S. at 279.

For many of the allegations, Plaintiffs fail to point to facts that demonstrate they were treated differently from similarly situated detainees. For example, Plaintiffs submit that they were

not allowed to consult with counsel together on account of their race. Dkt. No. 44 ¶ 115. However, Mr. Smith testified that he was not aware of "any other inmate or detainee who was a codefendant in a case and was allowed to meet with his or her attorney and a codefendant at the same time." Dkt. No. 83-2 ¶ 41; Dkt. No. 92-1 ¶ 41.

The only aspect to this claim where Plaintiffs point to differential treatment is their submission that they were subjected to strip searching on account of their race. Specifically, Plaintiffs argue that the strip-search policy was unevenly applied to them based on the race of their attorney. Dkt. No. 96 at 19-20. Plaintiffs testified that they were not strip searched after meeting with their former counsel who was white but began being strip searched after meeting with their current counsel who is black. Id.; Dkt. No. 84-1 at 149:4-17. Simply put, there is at least some evidence showing that Plaintiffs were treated more favorably when they retained white counsel over black counsel.

Nevertheless, Plaintiffs have again failed to point to any specific instance of discriminatory conduct by a particular jailer. Indeed, Plaintiffs cannot point to any particular Defendant who conducted a strip search or anyone who is responsible for the alleged disparities in how the strip-search policy was applied. Dkt. No. 83-2 ¶ 53; Dkt. No. 92-1 ¶ 53. Thus, it is impossible for the Court to conclude that any one Defendant

violated Plaintiffs' equal protection rights through the uneven application of the strip searches.  Therefore, the Glynn County Defendants' motion for summary as to Plaintiff's equal protection claim is **GRANTED**.

### d. Sixth Amendment (the Handling of Legal Documents Claim)

In Count VII of the amended complaint, Plaintiffs bring a Sixth Amendment claim against Defendants Jump, Heath, Austin, and Shuman.  Dkt. No. 44 at 27-28.  Plaintiffs argue these Defendants violated their Sixth Amendment rights by "1) Forcibly seizing PASTOR and MRS. SMITH'S legal documents; 2) Reading the legal documents; 3) Blocking the flow of legal material from their counsel; 4) Refusing to allow counsel to see PASTOR and MRS. SMITH together; 5) Separating PASTOR and MRS. SMITH in court and attempting to  coerce MRS. SMITH to act against PASTOR SMITH; 6) Strip searching PASTOR and MRS. SMITH each time they met with NEW COUNSEL but not with MR. RAMSEY or MS. LUGUE and other ways." Id. ¶ 119.

The constitutional guarantee of counsel under the Sixth Amendment has been construed to include four rights: "[1] the right to counsel, [2] the right to effective assistance of counsel, [3] the right to a preparation period sufficient to ensure a minimal level of quality of counsel, and [4] the right to be represented by counsel of one's own choice." See United States v. McCutcheon, 86 F.3d 187, 189 (11th Cir. 1996).

Plaintiffs' two main contentions in their briefs focus on blocking the flow of legal material and refusing to allow counsel to see Plaintiffs together.  Specifically, Mr. Smith testified that Defendant Shuman "took [their] legal papers . . . and held them for some time."  Dkt. No. 84-1 at 42.  Mr. Smith further testified that some of the documents were missing.  Id.  Notably though, neither Plaintiff could state how long Defendant Shuman held the documents or identify any document that was actually missing.  Id.  Further, aside from mere speculation, neither Plaintiff could affirmatively submit facts that demonstrate any Defendants read any legal documents.

It is undisputed that Defendant Shuman took the documents to check for contraband as required by policy.  Dkt. No. 83-2 ¶ 64; Dkt. No. 92-1 ¶ 64.  It is further undisputed that Defendant Shuman did not read any legal documents.  Dkt. No. 83-2 ¶ 64.  Defendant Shuman testified that she did not even remove the documents from the envelopes containing them.  Id.  Plaintiffs do not point to any evidence that refutes Defendant Shuman's testimony, aside from the mere speculation offered by Mr. Smith in his deposition.  Accordingly, Plaintiffs have failed to demonstrate how Defendant Shuman's conduct regarding legal documents interfered with their right to counsel.

Additionally, Plaintiffs argue that Defendants violated their Sixth Amendment rights by refusing to allow both Plaintiffs to

meet with counsel at the same time.  It is undisputed that it is the official policy of the Glynn County Detention Center to not allow co-defendants to meet together with their attorney absent a court order.  Dkt. No. 83-2 ¶ 39; Dkt. No. 92-1 ¶ 39.  Indeed, Plaintiffs were generally kept separated while detained.  Dkt. No. 83-2 ¶ 38; Dkt. No. 92-1 ¶ 38.  Although the Sixth Amendment provides a right to counsel, Plaintiffs fail to identify any case law that demonstrates the Sixth Amendment encompasses the privilege to meet with other co-defendants.  Further, once Plaintiffs secured a court order to meet counsel together, they were allowed to do so.  Dkt. No. 83-2 ¶ 42; Dkt. No. 92-1 ¶ 42.  As such, because there is no evidence to show the Glynn County Defendants committed a constitutional violation, their motion for summary judgment as to Plaintiffs' Sixth Amendment claim is **GRANTED.**

**e. First Amendment (the Dietary Claim)[9]**

In Count VIII of the amended complaint, Plaintiffs bring a 42 U.S.C. § 1983 First Amendment claim against Defendants Jump, Heath, Austin, and Shuman.  Dkt. No. 44 at 28-29.  Plaintiffs contend that these Defendants violated the First Amendment by "arbitrarily terminating [Plaintiffs'] accommodation to their [vegan] diet in

---

[9] This is the same claim as the one Plaintiffs bring against Defendant Austin, simply alleged against some of the Glynn County Defendants as well.

observance of their religion and the free exercise of their religion." Id. ¶ 122.

In moving for summary judgment, Defendants Jump, Heath, and Shuman point out that Plaintiffs have failed to submit any evidence that any of these Defendants ever denied Plaintiffs a vegan meal. Dkt. No. 83-2 at 8. Indeed, Plaintiffs point only to a particular instance of being denied meals which did not involve Defendants Jump, Heath, or Shuman. Id. As such, there is no dispute as to a genuine issue of material fact regarding whether these Defendants violated Plaintiffs' First Amendment rights, and therefore summary judgment is **GRANTED** on this claim.

### f. Intentional Infliction of Emotional Distress

In Count XVI of the amended complaint, Plaintiffs allege an IIED claim against all Defendants, stating their arrest and continued incarceration was outrageous and extreme because Defendants "had within their knowledge and records evidence that PASTOR and MRS. SMITH did not violate any law." Dkt. No. 44 ¶¶ 161-62. The Glynn County Defendants argue summary judgment is appropriate because "there is no evidence that any of these movants acted maliciously or with intent to violate any rights of the Smiths." Dkt. No. 83-1 at 61.

Plaintiffs assert that their arrests and continued incarceration were outrageous because 1) Defendant Hatcher testified to the first grand jury in support of the indictment, 2)

Defendant Shuman withheld Pastor Smith's medicine, 3) an unidentified defendant "administered Mrs. Smith's food and insulin whenever they desired such that Mrs. Smith loss [sic] consciousness," and 4) Defendants ignored their policy prohibiting co-defendants from meeting together until Plaintiffs retained their current counsel.  Dkt. No. 96 at 22-23.  Plaintiffs' assertions, however, do not touch on what made the arrests unlawful, and in Georgia a plaintiff may not premise an IIED claim on a *lawful* arrest or confinement.  See Draper v. Reynolds, 629 S.E.2d 476, 478-79 (Ga. Ct. App. 2006).

Further, in their amended complaint, Plaintiffs base their IIED claim on the conditions of their confinement, not their continued confinement despite Defendants' alleged "knowledge and records [showing] evidence that PASTOR and MRS. SMITH did not violate any law."  Dkt. No. 44 ¶ 162.  Such assertions are new bases for their claim raised beyond the pleadings stage and thus, like the same claim asserted against Defendant Austin discussed *supra*, inappropriate for this Court to consider at the motion for summary judgment stage.  See Varazo, 754 F. App'x at 919. Plaintiffs do not present evidence to show a genuine dispute as to any material fact regarding whether the Glynn County Defendants' conduct in the arrest and incarceration of Plaintiffs was outrageous or extreme—necessary elements for their IIED claim—and thus the Glynn County Defendants' motion for summary judgment is

**GRANTED** on this ground.

### g. Sheriff as Final Policymaker Claim

For their final claim, Count XVIII of the amended complaint, Plaintiffs allege that Defendant Glynn County is liable through the actions of Defendant Jump, the relevant final policymaker. Dkt. No. 44 ¶¶ 171-172. Plaintiffs do not contend that the policies employed by the Sheriff's office are unlawful; instead, they argue the policies' alleged inconsistent application gives rise to this claim. Dkt. No. 96 at 21. Plaintiffs thus seek to establish the Sheriff is "liable under § 1983 for the unconstitutional acts of [his] subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

"It is well established in [the Eleventh] Circuit that supervisory officials are not liable" for these acts unless a plaintiff shows the supervisor directly participated in the acts or that a causal connection exists between the supervisor's actions and the unconstitutional conduct alleged. Id. Plaintiffs do not point to any of Defendant Jump's actions as unconstitutional, so Plaintiffs must show a causal connection exists between Defendant Jump's actions and the unequal application of the policies.

This is an "extremely rigorous" standard that requires Plaintiffs to show Defendant Jump, as the supervisor:

1) Was on notice of a "history of widespread abuse" but failed

to take corrective action,

2) Had instituted or maintained a policy condoning the constitutional violation, or

3) Knew that his subordinates would act unlawfully and failed to stop them from doing so.

Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014). These "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

Plaintiffs argue the inconsistent application of the strip search policy amounts to arbitrary and capricious acts, but they do not offer any evidence to establish Defendant Jump in his capacity as Sheriff 1) was on notice of widespread abuse of this policy, 2) instituted or maintained a practice of abusing the strip search policy, or 3) knew that his subordinates would abuse the strip search policy and failed to stop them from doing so. As such, because Plaintiffs do not raise a genuine dispute as to a material fact regarding whether Defendant Jump and Glynn County are liable as final policymakers under § 1983, the Glynn County Defendants' motion for summary judgment on this ground is **GRANTED**.

### Conclusion

For the above reasons, Defendant Austin's motion for summary judgment, dkt. no. 81, is **DENIED** as to Plaintiffs' First Amendment

claim against him and **GRANTED** in all other respects.  The Glynn County Defendants' motion for summary judgment, dkt. no. 83, is **GRANTED** in its entirety.  The Clerk is **DIRECTED** to terminate all Defendants except Defendant Austin as parties to this case.  The remaining parties' proposed consolidated pretrial order shall be due **sixty (60) days** from the date of this Order.

   **SO ORDERED** this 20th day of December, 2021.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA